UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL DEGRAW, as Personal
Representative of the Estate of JENNIFER
DEGRAW, Deceased,

       Plaintiffs,

vs.                                CASE NO.: 8:11-CV-720-T-17 MAP

BOB GUALTIERI, in his official capacity as
SHERIFF OF PINELLAS COUNTY,
FLORIDA,

       Defendant.
_____/

**ORDER ON DEFENDAT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

This cause is before the Court on Defendant's Motion for Judgment as a Matter of Law,

(the "Motion") (Doc. # 191), filed February 27, 2014, Plaintiff's Response in Opposition, (Doc. #

194), filed March 17, 2014, and Defendant's Reply, (Doc. # 201), filed March 31, 2014.  For the

reasons set forth below, Defendant's Motion for Judgment as a Matter of Law is **DENIED**.

**BACKGROUND**

This matter involves claims brought under 42 U.S.C. § 1983 for violations of Mrs.

DeGraw's 8th and 14th Amendment rights.  (Doc. # 2).  On March 16, 2009, Pinellas County

Sheriff Deputies Diebold and Baez were dispatched pursuant to a call for assistance with Mr.

Michael DeGraw.  Id.  Mr. DeGraw reported that his wife was bi-polar, had discontinued taking

her medication, and had become a danger to herself and others.  Id. at ¶19.  The deputies attempted

to detain Mrs. DeGraw and transport her to a mental health facility pursuant to Florida's Baker

Act.  Id. at ¶20.  Mrs. DeGraw resisted being detained, which prompted the deputies to physically

restrain her and deploy a Taser.  Id. at ¶21.  Based on her resistance, the deputies placed Mrs.

DeGraw under arrest for felonious battery on a law enforcement officer and transported her to jail—rather than to a mental health facility in accordance with Florida's Baker Act.  Id.

While at the jail, Mrs. DeGraw continued to refuse to take her medication or cooperate with the medical staff for the next eight days.  Id. at ¶23, 25.  Plaintiff alleged that the nursing staff falsified records showing they attempted to administer Mrs. DeGraw's medication when in fact they never attempted to administer the medication.  Id. at ¶27.  On March 24, 2009, at 6:30 a.m., Deputy Patricia Shoberg found Mrs. DeGraw on the floor and unresponsive, at which time Mrs. DeGraw was transported to Northside Hospital where she was later declared deceased.  Id. ¶28–29.  Deputy Shoberg was charged with checking on Mrs. DeGraw every fifteen minutes between 7:00 p.m. and 7:00 a.m.; however, at trial, Plaintiff presented jail videos that demonstrated Deputy Shoberg did not perform the required checks and falsified the "watch form."  Id. at ¶30.  Plaintiff alleged that at all times the nursing and medical staff, as well as the deputies, knew of Mrs. DeGraw's serious mental health and medical issues.  Id. ¶22, 24, and 26.

### PROCEDURAL POSTURE

On March 18, 2011, Plaintiff Michael DeGraw, as personal representative of the estate of Jennifer DeGraw, filed a complaint in the Sixth Judicial Circuit, in and for Pinellas County, Florida, alleging five counts:  Count I against Deputy Diebold for false arrest and imprisonment; Count II against Deputy Baez for false arrest and imprisonment; Count III against then Sheriff Jim Coats for false arrest and imprisonment; Count IV against then Sheriff Jim Coats for wrongful death; and Count V against then Sheriff Jim Coats for cruel and unusual punishment by way of failure to provide adequate and necessary medical care.  Id.  On April 5, 2011, the Defendants filed a Notice of Removal to the Middle District of Florida based on federal question jurisdiction.  (Doc. # 1).  Id.  On June 6, 2011, the Court granted in part the Defendants' Motion to Dismiss, and

dismissed Counts I–III, which terminated the cases against Deputies Diebold and Baez, and left Counts IV and V against then Sheriff Jim Coats.  (Doc. # 11).  Current Sherriff Bob Gualtieri was automatically substituted for then Sheriff Jim Coats, and sued in his official capacity as Sheriff of Pinellas County.  Fed. R. Civ. P. 25(d).  Defendant filed his Answer with accompanying affirmative defenses on June 16, 2011.  (Doc. # 12).

On August 2, 2011, Plaintiff filed a Motion for Leave to Amend Complaint.  (Doc. # 16). The Court initially denied that motion, but eventually granted Plaintiff leave to file an amended complaint to allege hedonic damages.  (Doc. # 39).  Plaintiff amended his complaint; Count I alleged 42 U.S.C. § 1983 violations, and Count II alleged violations of the Florida Wrongful Death Act.  (Doc. # 41).  Defendant moved for summary judgment on the issue of hedonic damages and Mrs. DeGraw's pain and suffering, as alleged in the Amended Complaint.  (Doc. # 49).  After consideration of both the Defendant's Motion for Partial Summary Judgment and Plaintiff's Reply, the Court granted Defendant's Motion for Partial Summary Judgment, and dismissed any claims for hedonic damages and Mrs. DeGraw's pain and suffering.  (Doc. # 62).  The parties then consented to remand Count II to state court, which solely left the alleged 42 U.S.C. § 1983 violations for trial by jury in this Court.  (Doc. # 100).

The jury trial began February 3, 2014, (Doc. # 154), and spanned nine days.  (Doc. # 182). During the course of the trial, Plaintiff's attorneys highlighted a number of deficiencies in Defendant's office's handling of Mrs. DeGraw's arrest and subsequent detention, including, but certainly not limited to: skipped and forged wellness checks; the failure to distinguish the proper nature of Mrs. DeGraw's medications; and the failure to identify Mrs. DeGraw's basis for lack of cooperation and refusal to consume food or nutrients.  On February 14, 2014, the jury found Defendant liable for the violations, and awarded $975,000.00 in damages.  (Doc. # 183).

3

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 50(a)(1), after a party has been fully heard on an issue during a jury trial, a court may grant a motion for judgment as a matter of law if it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a)(1); Cleveland v. Home Shopping Networks, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004). Undertaking this analysis, a court reviews all of the evidence in the record and "must draw all reasonable inferences in favor of the nonmoving party," in this case, the Plaintiff. Id. (citing Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 148–151 (2000)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (internal quotation marks omitted). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. (internal quotation marks omitted). To survive said motion, a plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim. Bogle v. Orange County Bd. Of County Comm'rs, 162 F.3d 653, 659 (11th Cir. 1998).

**ANALYSIS**

The jury was presented with five factual inquiries, and was required to answer all five in the affirmative before awarding compensatory damages:

First, whether Jennifer DeGraw had a serious medical need;

Second, whether Jim Coats, in his official capacity as Sheriff of Pinellas County and predecessor to Bob Gualtieri, knew that Jennifer DeGraw had a serious medical need that posed a risk of serious harm;

Third, whether Jim Coats, in his official capacity as Sheriff of Pinellas County and predecessor to Bob Gualtieri, was deliberately indifferent to the serious medical need;

4

Fourth, whether Jim Coats, in his official capacity as Sheriff of Pinellas County and predecessor to Bob Gualtieri, acted under color of law when he failed to provide necessary medical care for Jennifer DeGraw's serious medical need; and

Fifth, whether Jim Coats' conduct, in his official capacity as Sheriff of Pinellas County and predecessor to Bog Gualtieri, caused Jennifer DeGraw's injuries.

(Doc. # 183).  In the subject Motion, Defendant did not dispute whether Jennifer DeGraw had a serious medical need, and therefore the Court declines to address that issue further.  See Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 400–404 (2006).  Rather, Defendant asserts Plaintiff failed to establish: 1) Officials showed deliberate indifference; 2) Any alleged deliberate indifference was the byproduct of a policy or custom of the Pinellas County Sheriff's Office; and 3) That policy or custom was the moving force of the alleged constitution violation. (Doc. # 191).

1. **Plaintiff Established Legally Sufficient Evidence to Prove Officials Showed Deliberate Indifference to Jennifer DeGraw's Serious Medical Need**

To establish deliberate indifference, a plaintiff is required to show that the officials subjectively knew about and disregarded a risk of harm to the detainee.  Farmer v. Brennan, 511 U.S. 825, 829 (1994); Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008) (citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)).  The conduct amounting to disregard for a risk of harm must surpass gross negligence.  Burnette, 533 F.3d at 1330.  The Eleventh Circuit Court of Appeals has held that a need could be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (citing Hill v. DeKalb Reg'l Youth Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  When that need for medical treatment is obvious, "medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference."  Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995) (citing Ancata v.

Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985).  The Eleventh Circuit Court of

Appeals has also found deliberate indifference where "medical treatment is so grossly

incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to

fundamental fairness."  Adams, 61 F.3d at 1544 (citing Rogers v. Evans, 792 F.2d 1052, 1058

(11th Cir. 1986)) (internal quotation marks omitted).  Further, deliberate indifference may be found

when a doctor decides "to take an easier and less efficacious course of treatment."  Adams, 61 F.3d

at 1544 (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

        The evidence adduced at trial concerning deliberate indifference, in the light most

favorable to Plaintiff, presents a legally sufficient basis upon which a jury could find for the

Plaintiff.  First and foremost, the entire basis for the Pinellas County Sheriff's Office's contact

with Mrs. DeGraw was her husband's concern that she stopped taking her medication and posed a

threat to herself and others.  Furthermore, members of the jail's psychiatric team, including Ms.

Jennifer Trivoli, testified Mrs. DeGraw was constantly observed on the floor, half dressed,

rambling incessantly, pacing nightly, and often unresponsive to commands or requests; Mrs.

DeGraw was "not reality based" when she spoke or interacted with staff; and the jail staff had

access to Plaintiff's medical records.  Based on her observations, findings, and conclusions, Ms.

Trivoli met with and reviewed her observations, findings, and conclusions with Dr. Richard Miller,

D.O., who ultimately concluded Mrs. DeGraw had a serious medical need that required some form

of treatment for her psychosis or bi-polar disorder; however, although Mrs. DeGraw was not taking

her medicine or consuming food or nutrients, jail policy allowed Dr. Miller to wait up to fourteen

days to review and treat a patient, and Dr. Miller relied on that policy to not seek any change in

Mrs. DeGraw's treatment.  These actions and decisions—or lack thereof—in addition to the

evidence enumerated in Plaintiff's Response, (Doc. # 194, pp. 5–14), overwhelmingly demonstrate

Defendant's deliberate indifference to Mrs. DeGraw's serious medical need.  Dr. Miller's and the entirety of the jail staff's conduct far surpassed gross negligence when Dr. Miller determined Mrs. DeGraw was suffering from psychosis or bi-polar disorder, which was so obvious that even Ms. Trivoli—legally considered a lay person at trial—easily recognized the necessity for Dr. Miller's attention, and the ensuing medical care was so cursory, or at the very least grossly inadequate, so as to amount to no treatment at all.  Dr. Miller did not exercise his professional judgment in his determination of the course of treatment; rather, he made no such determination nor exercise of professional judgment, and relied on the fourteen-day policy to delay taking three minutes to walk down the hall and observe Mrs. DeGraw to determine the appropriate course of treatment. Therefore, as a matter of law, Plaintiff established legally sufficient evidence to prove officials showed deliberate indifference to Mrs. DeGraw's serious medical need when viewed in the light most favorable to the non-moving party.

> **2. Plaintiff Established Legally Sufficient Evidence to Prove the Deliberate Indifference was a Byproduct of, and Moving Force Behind, the Policies of the Pinellas County Sheriff's Office**

For supervisor liability, the Eleventh Circuit Court of Appeals has provided the five following circumstances when liability could attach, one of which must be present at the time constitutional rights are violated:

1. The supervisor personally participated in the violation of a plaintiff's constitutional rights;
2. A history of widespread abuse, meaning abuse that was obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences, put the supervisor on notice of the need to take corrective action and he failed to do so;
3. The supervisor intentionally implemented an "official policy or custom" that resulted in a subordinate acting with deliberate indifference, meaning reckless disregard, to a plaintiff's constitutional right;
4. The supervisor directed a subordinate to take the action that resulted in the violation of a plaintiff's constitutional right; or
5. The supervisor knew that a subordinate would take actions in violation of a plaintiff's constitutional right and failed to stop the subordinate from doing so.

Eleventh Circuit Pattern Jury Instructions, Civil, 5.8; Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007).  There is no question that circumstances one, four, and five are inapplicable to the current set of facts and evidence adduced at trial—there was no testimony or evidence presented to suggest Jim Coats personally participated in the violation, directed any subordinates to undertake the actions that resulted in the violation, or actually knew any subordinate would take actions that resulted in the violation.  Therefore, the Court is faced with the remaining two possibilities: 1) A history of widespread abuse existed to put Jim Coats on notice of the need to take corrective action; or 2) Jim Coats intentionally implemented the policy or custom that resulted in deliberate indifference.  Id.; see Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  For either to result in liability to the Sheriff's Office, a causal connection between the actions of the supervisory official and the alleged deprivation must exist.  Wilson v. Attaway, 757 F.2d 1227, 1241 (11th Cir. 1985); Henzel v. Gerstein, 608 F.2d 654, 658 (5th Cir. 1979).

Defendant correctly states the Eleventh Circuit Court of Appeals has held that supervisory liability may only attach when the implementation of a policy is "deliberate[ly] indifferen[t] as to its known or obvious consequences." McDowell v. Brown, 392 F.3d 1283, 1291 (11th Cir. 2004). The primary policy at issue is Policy 13.39, which required an evaluation as soon as possible, no later than 14 days.  Plaintiff has not alleged Policy 13.39 is unconstitutional, and therefore "considerably more proof than the single incident [is] necessary…to establish both the requisite fault…and the causal connection between the policy and the constitutional deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability" for a widespread practice or custom.  Id. at 823–824; see Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991).

Sheriff Jim Coats testified at trial he was aware of mentally ill and unstable individuals entering the jail "all the time," and conceded the jail did not meet the statutory qualifications for receiving mentally ill and unstable individuals.  Further, as Deputy Diebold testified, it was the policy of the Sheriff's Office to arrest and jail any offender accused of a felony, regardless of the circumstances.  When these two particular policies collide, the result is potentially catastrophic, like the present case.  While there was no direct evidence adduced at trial to suggest a widespread abuse so as to require corrective action, the consequence of detaining a person under Florida's Baker Act presents an obvious scenario—a person suffering from a mental condition requiring serious and immediate medical attention lacks the ability to comprehend her surroundings or reasons for detention.  Lacking this ability to comprehend, she could conceivably lash out at law enforcement officers and resist arrest with extreme violence, including kicking, punching, or scratching.  Unfortunately, that is precisely the scenario that transpired.  As Jim Coats testified these individuals entered the jail "all the time," the jail was not properly situated to satisfy statutory qualifications, and the jail's physicians constantly affirmed the 14-day requirement, the jury had a legally sufficient evidentiary basis to find the deliberate indifference was a byproduct of, and moving force behind, the policies of the Pinellas County Sheriff's Office.  Accordingly, it is

      **ORDERED** and **ADJUDGED** that:

1.  Defendant's Motion for Judgment as a Matter of Law is **DENIED**;

2.  Defendant's Oral Motion, (Doc. # 170), and Renewed Oral Motion for Directed Verdict, (Doc. # 178), is **DENIED** for the reasons stated herein; and

3.  Plaintiff's Oral Motion for Directed Verdict, (Doc. # 180), is **DENIED** as **MOOT**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this  20th  day of May, 2014.

_____
ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:      All parties and counsel of record